RECEIVED
IN OPEN COURT
JUN - 7 2024
CLERK U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA

v.

DMITRY TIMASHEV,

Defendant.

Case No. 1:24-CR-111

**STATEMENT OF FACTS**

The United States and the defendant, DMITRY TIMASHEV, agree the following facts are true and correct. The United States and the defendant further agree that had this matter proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1. The defendant, DMITRY TIMASHEV, is a U.S. and Russian citizen who resides in Alexandria, Virginia.
2. From at least in or about July 2020 and continuing until at least in or about April 2023, the defendant and others, known and unknown, in the Eastern District of Virginia and elsewhere, knowingly conspired and agreed together and with each other to:
   a. commit a crime against the United States and its agency, the Department of Commerce, namely to willfully violate requirements, orders, regulations, and prohibitions issued under the Export Control Reform Act, 50 U.S.C. § 4801 *et seq.*, by exporting goods from the Eastern District of Virginia to Russia via Kazakhstan without having first obtained the required license from the U.S. Department of Commerce, Bureau of Industry and Security (BIS) in violation of 50 U.S.C. § 4819 and 15 C.F.R. § 764.2; and

b. defraud the United States by impairing, impeding, and obstructing the lawful government functions of the U.S. Department of Commerce in violation of 18 U.S.C. § 371.

3. From at least in or about July 2020 to 2023, co-conspirator 1, as well as other co-conspirators located in Russia, asked the defendant for firearm parts for Sig Sauer, Glock, and AR15 weapons.

4. From at least in or about July 2020 to 2023, co-conspirator 1 sent the defendant requests to purchase specific firearm parts and ammunition. In exchange, co-conspirator 1 paid school tuition for the defendant's daughter and rent for an apartment in Ekaterinburg, Russia.

5. Co-conspirator 1 provided the defendant with the names and addresses where the firearm components and ammunition should be sent. Before July 6, 2022, all of the packages containing firearm components and/or ammunition were shipped to Russia.

6. After the Russian invasion of Ukraine in February 2022, the defendant was no longer able to create a label on the U.S. Postal Service's website for the purpose of sending a package of firearm components to Russia. Therefore, co-conspirator 1 requested that the defendant send the goods to his relative's apartment in Kazakhstan from where the goods would be sent to Russia.

7. In March 2023, the defendant purchased the following firearm parts, among others: take down levers, magazine catches, magazines, safety levers, and hammer assemblies.

8. Pursuant to instructions given to the defendant by co-conspirator 1, in March 2023, the defendant shipped a parcel to co-conspirator 2 in Kazakhstan from a post office in

Alexandria, Virginia. The parcel's manifest stated it contained "10 springs, 8 grips/handles, 6 ball joints."

9. On or about May 3, 2023, U.S. Customs and Border Protection (CBP) seized the parcel after discovering it contained pistol and rifle parts, including a lever take down, a magazine catch, a spring loaded extractor bearing, a striker sleeve, a magazine, a weapons pin kit, a safety lever, and a hammer assembly.

10. The firearm parts contained in this seized parcel were listed on the Commerce Control List, 15 C.F.R. Part 774, Supplement Number 1, at the time the defendant shipped them to Kazakhstan.

11. The defendant knew he needed licenses to export those firearm parts to Kazakhstan and Russia but did not obtain any licenses.

12. The defendant willfully attempted to export this package containing firearm parts from the Eastern District of Virginia to Kazakhstan, knowing it was ultimately destined for Russia, without having first obtained the required licenses from the Department of Commerce, all in violation of 50 U.S.C. § 4819.

13. On or about March 22, 2023, the defendant mailed a package that he falsely indicated contained "joint ball shafts parts" to an individual in Kazakhstan, co-conspirator 3. The defendant completed and signed the false customs declaration associated with this package. In truth, this package contained 700 Berger hybrid OTM tactical rifle bullets. The package was returned to the defendant by the Kazakhstan postal service.

14. The bullets in the package that the defendant mailed on March 22, 2023, were listed on the Commerce Control List at the time the defendant shipped them to Kazakhstan.

15. The defendant knew he needed a license to export those bullets to Kazakhstan and Russia but did not obtain a license.

16. The defendant willfully exported this package containing bullets from the Eastern District of Virigina to Kazakhstan, knowing it was ultimately destined for Russia, without having first obtained the required licenses from the Department of Commerce, in violation of 50 U.S.C. § 4819.

17. On or about April 27, 2023, the defendant mailed a package to co-conspirator 2 in Kazakhstan at the direction of co-conspirator 1. The defendant falsely indicated the package contained "springs" to obscure its true contents, which included nine AR15 bolt kits and four trigger reset kits. The AR15 bolt kits were comprised of gas rings, an extractor, extractor pins, an extractor spring assembly, a selector spring, an ejector, and ejector pins. The trigger reset kits were comprised of a "Super Sporting Drop-In Trigger Group with Anti-Walk Pins AR-15 Small Pin. 154" Single Stage Don't Tread on Me Flag." This package was returned to the defendant by the Kazakhstan postal service.

18. The firearm parts contained in the package that the defendant mailed on April 27, 2023, were listed on the Commerce Control List at the time the defendant shipped them to Kazakhstan.

19. The defendant knew he needed licenses to export those firearm parts to Kazakhstan and Russia but did not obtain any licenses.

20. The defendant willfully exported this package containing firearm parts from the Eastern District of Virigina to Kazakhstan, knowing it was ultimately destined for

Russia without having first obtained the required licenses from the Department of Commerce, in violation of 50 U.S.C. § 4819.

21. This statement of facts includes those facts necessary to support the plea agreement between TIMASHEV and the United States. It does not include each and every fact known to TIMASHEV or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding TIMASHEV's case.

Respectfully submitted,

Jessica D. Aber
United States Attorney

Date: June 7, 2024

By: ______________________
Ronald L. Walutes, Jr.
Assistant United States Attorney

Matthew G. Olsen
Assistant Attorney General

Date: June 7, 2024

By: ______________________
Tracy Varghese
Trial Attorney
Counterintelligence & Export Control Section
National Security Division

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, DMITRY TIMASHEV, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

DMITRY TIMASHEV
Defendant

I am Nate Wenstrup, defendant's attorney. I have carefully reviewed the above Statement of Facts with him and went over the agreement with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Nate Wenstrup, Esquire
Attorney for DMITRY TIMASHEV